UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CALVIN JEROME MOORE,

                Plaintiff,                Case No. 2:11-cv-345

v.                                    Honorable Gordon J. Quist

R. CHEATHAM, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 14, 2011, this Court ordered service of Plaintiff's complaint on Defendants R. Cheatham, N. Phillipson, Unknown Frontera, Unknown Crompton[1], M. Galloway, H. Tyree, Brenda Jones, and E. Heightman[2]. On March 14, 2012, Defendants Cheatham, Galloway, James and Phillipson filed a motion for summary judgment (docket #41) asserting that their conduct did not violate Plaintiff's rights and that some or all of his claims are barred by the pertinent statute of limitations. On June 18, 2012, Defendants Crompton, Frontera, and Tyree filed a motion to dismiss (docket #90) on the ground that Plaintiff failed to exhaust his available administrative remedies. Defendants Crompton, Frontera, and Tyree also assert that they are entitled to dismissal because Plaintiff's claims are barred by the statute of limitations and lack merit. Because Defendants Crompton, Frontera, and Tyree rely on exhibits beyond the allegations in the complaint, the court

_____

[1]Named in Plaintiff's complaint as "Cromton."

[2]Service has not been executed on E. Heightman. Therefore, he is not currently a party to this action.

will construe their motion as one for summary judgment. Plaintiff filed responses to the motions (docket #71, #72, #104, #109) and Defendants Crompton, Frontera, and Tyree have filed a reply to Plaintiff's response (docket #107).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the

moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (AMF), but the events giving rise to his complaint occurred while he was incarcerated in the Alger Maximum Correctional Facility (LMF). In his *pro se* complaint, he sues Health Unit Manager R. Cheatham; Nurse Supervisor B. Thompson; Doctors (Unknown) Frontera, Crompton and Tyree; Nurse M. Galloway and Corrections Officers E. Hiteman and N. Phillipson.

In his 100-page complaint, Plaintiff contends that he was denied proper medical treatment in violation of his Eighth Amendment rights. Plaintiff alleges that he began experiencing an extreme burning sensation in his scrotum in July of 2006. The area became very swollen and sensitive to the touch. Plaintiff also experienced pain when urinating and blood in his urine.

Plaintiff was diagnosed with a hydrocele.[3]  Over the next two years, Plaintiff made repeated health care requests and filed numerous grievances regarding his medical condition.  His condition worsened and he began to suffer extreme stomach pain and painful bowel movements from the growing hydrocele.  By 2008, Plaintiff had difficulty walking, sitting and eating, and he drank very little because it was so painful to urinate.  It is unclear what medical treatment Plaintiff received, if any, for the hydrocele.  Plaintiff contends that Defendants intentionally misrepresented his medical condition and denied treatment.

Plaintiff ultimately was sent to Munising Memorial Hospital on December 1, 2008.  The doctor immediately diagnosed him with a fever and infection in his hydrocele and ordered an ultrasound.  Later that evening, Plaintiff was transferred to Marquette General Hospital, where he was told that surgery was required, but that his infection had to be treated first.  Plaintiff was sent back to Alger with instructions for the treatment of Plaintiff's pain, fever and infection. Over the next week, Plaintiff did not receive any medication or see a doctor despite repeated requests.  Plaintiff alleges that as a result of the lack of proper treatment, his left testicle was surgically removed on December 11, 2008.  According to Plaintiff, the surgeon told him that his testicle could have been saved if treated earlier, but had decayed over time to a point that removal was required.

In addition to his Eighth Amendment claim, Plaintiff contends that Defendants denied him medical treatment in retaliation for his numerous complaints and grievances.  Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages, as well as costs.

---

[3]According to mayoclinic.com, a hydocele is a fluid-filled sac surrounding a testicle that results in swelling of the scrotum.

Initially, Defendants Frontera, Crompton, and Tyree claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective March 5, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in

original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ."  *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130.  *Id.* at ¶Q.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Defendants Frontera, Crompton, and Tyree attach a copy of the Grievance Inquiry Screen for Plaintiff for the time period of July 8, 2006, until September 14, 2011. According to the Inquiry Screen, Plaintiff filed thirty-five (35) grievances during this time period. (Defendants' Exhibit A, docket #90-2.) Of these grievances, thirty-one (31) of them do not name Defendants Frontera, Crompton, and / or Tyree. (Defendants' Exhibits B, C, and D, docket #90-3 through 92-2.)

In Grievance LMF-08-10-4358-12d4, Plaintiff refers to the "Dr." who saw him on September 29, 2008. According to the grievance response, the "Dr." was Defendant Crompton. (Defendants' Exhibit C-4, pp. 10-11 of 21, docket #91-4.) In the step I grievance, Plaintiff complains of left leg numbness, back pain, compressed nerve, and arthritis of the hip. (Defendants' Exhibit C-4, p. 11 of 21, docket #91-4.) Grievance LMF-08-10-4358-12d4 does not address the claims asserted in the instant complaint. Therefore, it did not serve to exhaust Plaintiff's administrative remedies with regard to these claims.

In Grievance LMF-08-11-4799-12d4, Plaintiff refers to the "Dr." who saw him on November 4, 2008. (Defendants' Exhibit C-5, p. 9 of 21, docket #91-5.) In their brief, Defendants concede that this refers to Defendant Crompton. (Docket #91, p. 12.) In this grievance, Plaintiff complains that Defendant Crompton failed to order blood work or x-rays, falsified medical notes, failed to examine Plaintiff, and failed to follow the instructions of an outside physician. In the grievance, Plaintiff further complains that he was suffering from numbness in his left side, groin and legs, as well as an enlarged scrotal sac and abdominal pain. (Defendants' Exhibit C-5, p. 9 of 21, docket #91-5.) The grievance does not allege that Defendant Crompton retaliated against Plaintiff. Therefore, Grievance LMF-08-11-4799 serves to exhaust Plaintiff's Eighth Amendment claims against Defendant Crompton, but does not exhaust his retaliation claims.

In Grievance LMF-08-11-4792, Plaintiff fails to name Defendants Frontera or Tyree at all and does not name Defendant Crompton until his Step II appeal. (Defendants' Exhibit C5, pp. 12-13, docket #91-5.) In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Id.* Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Therefore, Grievance LMF-08-11-4792 does not serve to exhaust Plaintiff's administrative remedies against Defendants Crompton, Frontera, or Tyree.

Finally, Grievance LMF-09-01-81-12d4 names Defendant Frontera at step I, but neither Defendant Crompton nor Defendant Tyree are named. (Defendants' Exhibit C-3, p. 26 of 35, docket #91-3.) In his grievance, Plaintiff states that Defendant Frontera failed to provide proper treatment over a period of two and a half years, which resulted in the loss of Plaintiff's left testicle. (Defendants' Exhibit C-3, pp. 26-29 of 35, docket #91-3.) As noted by Defendants, this grievance was rejected as untimely at step I. However, it appears that Plaintiff's grievance was addressed on the merits at steps II and III. The undersigned concludes that this grievance serves to exhaust Plaintiff's Eighth Amendment claims against Defendant Frontera. As noted above, Plaintiff's Eighth Amendment claims against Defendant Crompton have also been exhausted. However, Plaintiff has failed to exhaust his claims against Defendant Tyree.

In their briefs, Defendants Cheatham, Galloway, Phillipson, and James, as well as Defendants Frontera, Crompton, and Tyree, state that some or all of Plaintiff's claims are time barred. In order to determine the appropriate statute of limitations for § 1983 actions, reference must

be made to the laws of the state where the cause of action occurred. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). Michigan's three-year statute of limitations for personal injury claims applies in this case. *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); MICH. COMP. LAWS § 600.5805(8).

Under Sixth Circuit precedent, the complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). As noted by Defendants, Plaintiff's complaint was filed in this court on September 14, 2011, and was signed by Plaintiff on September 13, 2011. Under Sixth Circuit law, the date the prisoner signs the complaint is deemed to be the date of handing to officials. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006), *Bomer v. Bass*, 76 F. App'x 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order)). Therefore, any claims which accrued prior to September 13, 2008, are time-barred.

In his complaint, Plaintiff alleges that he first began to experience symptoms on July 8, 2006. Plaintiff made his initial health care request on the same date. Plaintiff asserts that Defendant Cheatham improperly downgraded his condition to "routine" because the facility did not have a regular doctor. Plaintiff claims that this improper downgrade resulted in his condition continuing to worsen. Plaintiff alleges that as a result of the lack of proper treatment over the next two years, his left testicle was surgically removed on December 11, 2008. According to Plaintiff, the surgeon told him that his testicle could have been saved if treated earlier, but had decayed over time to a point that removal was required.

Defendants Cheatham, Galloway, Phillipson, James, Frontera, Crompton, and Tyree assert that Plaintiff's claim regarding the downgrading of his condition to "routine" accrued on July 8, 2006, when Defendant Cheatham actually downgraded the condition. According to the

complaint, this denial caused Plaintiff to experience continued pain and emotional distress. As noted above, Plaintiff made repeated health care requests between 2006 and 2008 and filed numerous grievances regarding his medical condition. His condition worsened and he began to suffer extreme stomach pain and painful bowel movements from the growing hydrocele. By 2008, Plaintiff had difficulty walking, sitting and eating, and he drank very little because it was so painful to urinate. It is clear from Plaintiff's allegations that he was aware of the seriousness of his condition at or very near the time in which Defendant Cheatham actually downgraded the condition. Similarly, Defendant Cheatham's failure to provide proper treatment for his condition should reasonably have been known to Plaintiff at or near the time of the denial. *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (concluding that a prisoner's cause of action for deliberate indifference accrued on the date that he was denied medical care, even though the full extent of his injury was not known until later) (*citing Hermansen v. Schickel,* 202 F.3d 268 (6th Cir.1999)). Therefore, the undersigned concludes that Plaintiff's allegations of wrongdoing which occurred prior to September 13, 2008, are time-barred. However, as noted below, even if these claims were not time-barred, the record shows that defendants were not deliberately indifferent to plaintiff's medical needs.

Defendants Cheatham, Galloway, Phillipson, James, Frontera, Crompton, and Tyree also claim that Plaintiff's claims do not rise to the level of an Eighth Amendment violation. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

> order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Defendants offer a copy of Plaintiff's medical records for the pertinent time period in support of their motion for summary judgment. A review of these records shows that Plaintiff was noted to have some scrotal disproportion on July 18, 2006, when he was examined by Mary K. Hite, R.N. However, no fluid wave, guarding or discomfort was noted. (Defendants' Exhibit C, p. 6, docket #42-4.) Plaintiff was seen by Nurse Practitioner David E. Guinn on July 25, 2006, who noted: "Left scrotal sac indeed uniformly enlarged. Slight transillumination noted with using otoscope light. No scrotal masses palpated. No erythema noted." Guinn stated that Plaintiff should kite if the symptoms persisted or worsened and that he could take Motrin or Tylenol for discomfort. (Defendants' Exhibit C, p. 9, docket #42-4.) Plaintiff was seen by Defendant Galloway on July 29, 2006, who stated that Plaintiff would be seen by the Medical Practitioner on or about August 2, 2006. (Defendants' Exhibit C, p. 10, docket #42-4.) Plaintiff was seen by Defendant Frontera on August 16, 2006, who ordered a urine specimen and the medication Cipro. (Defendants' Exhibit C, p. 14, docket #42-4.) On August 25, 2006, Defendant Frontera determined that Plaintiff had "benign hypertrophy prostate, chronic hematuria secondary to it." (Defendants' Exhibit C, p. 15, docket

#42-4.) On August 29, 2006, Defendant Frontera ordered "scrotal support"[4] for a period of six months. (Defendants' Exhibit C, p. 17, docket #42-4.) On August 29, 2006, Defendant Frontera stated that due to Plaintiff's chronic hydrocele in the left testicle area, he had ordered scrotal support for Plaintiff. (Defendants' Exhibit C, p. 18, docket #42-4.) On August 28, 2006, Defendant Galloway saw Plaintiff, who requested an explanation of Defendant Frontera's conclusions. Defendant Galloway noted: Chronic hematuria (blood in urine) secondary to BPH (benign prostatic hypertrophy) - (enlarged prostate). Chronic left testicle enlargement with hydocele (water sac), right testicle normal, no hernia, enlarged prostate with normal texture - urine culture negative (no infection). He ordered flomax and follow-up urine in January 07." (Defendants' Exhibit C, p. 19, docket #42-4.) Plaintiff was given scrotal support on September 5, 2006. (Defendants' Exhibit C, p. 21, docket #42-4.) On October 16, 2006, Plaintiff was seen by Nurse Hite:

> @1155 inmate seen in SEG triage room normal ambulation no guarding facial [signs or symptoms] of pain and no [complaints] of pain vitals and weight done. Imate inst to lye on top of exam table and lower his pants for scrotalexam [sic] and to do abdominal exam inmate laughed at this writer and refused to cooperate with exam. Inmate in NAD and as he denies discomfort at this time encounter immediately terminated r/t lack of cooperation.

(Defendants' Exhibit C, p. 23, docket #42-4.)

Defendant Frontera reordered scrotal support for Plaintiff on February 28, 2007. (Defendants' Exhibit C, p. 25, docket #42-4.) On April 15, 2007, Plaintiff kited, complaining of having a swollen testicle for one year. On April 20, 2007, and on April 23, 2007, Plaintiff refused a nurse appointment, insisting that he would only see the doctor. (Defendants' Exhibit C, pp. 27-29, docket #42-4.) On July 3, 2007, Defendant Frontera examined Plaintiff, changed Plaintiff's

---

[4]Athletic supporter.

medication from Flomax to Hytrin, and otherwise continued Plaintiff's treatment as before. (Defendants' Exhibit C, p. 32, docket #42-4.) On August 31, 2007, Defendant Frontera renewed the scrotal support medical detail and placed Plaintiff on special accommodations due to hydrocele testicular condition. (Defendants' Exhibit C, p. 35, docket #42-4.)

On January 14, 2008, Plaintiff complained of blood in his urine. The nurse performed a urine dipstick to check for blood in the urine. On January 15, 2008, Plaintiff kited health care to request an extra large athletic supporter, stating that the one he had was causing pain because it had become too small. (Defendants' Exhibit C, pp. 38-39, docket #42-4.) On January 23, 2008, Defendant Frontera ordered a change in size of the scrotal support and a follow-up visit. (Defendants' Exhibit C, p. 42, docket #42-4.) Plaintiff received the larger size scrotal support on January 24, 2008. (Defendants' Exhibit C, p. 43, docket #42-4.) Plaintiff was examined by Defendant Frontera on February 14, 2008. The examination revealed that Plaintiff continued to suffer from a "hydrocele like outgrowth" on his left testicle. (Defendants' Exhibit C, p. 48, docket #42-4.) On August 7, 2008, Doctor Jean Pierre-Paul, M.D., examined Plaintiff and noted that Plaintiff was not suffering from nocturia (a need to get up during the night to urinate), but that Plaintiff continued to demonstrate a "hydrocele like outgrowth" on his left testicle. (Defendants' Exhibit C, pp. 50-53, docket #42-4.)

On September 7, 2008, Plaintiff kited that he had been on the MD waiting list for nearly two months and that his medical condition was continuing to worsen. Defendant Galloway responded by stating that Plaintiff had been seen by the doctor on August 7, 2008, by Nurse Clark on August 29, and that he had been referred to see the doctor on approximately September 12, 2008, which was not until the end of that week. Galloway also noted that Plaintiff kited on August 29 (the same day he was seen by Nurse Clark) and complained of pain in his neck. Nurse Galloway stated

14

that it would be helpful if Plaintiff discussed all his concerns at his appointments. (Defendants'
Exhibit C, p. 54, docket #42-4.)

On November 23, 2008, Nurse Kroupa examined Plaintiff after he complained of
sharp throbbing pain in his suprapubic area and the left lower quadrant of his abdomen, which had
begun 5 days earlier. Plaintiff also complained of nausea. Kroupa noted that Plaintiff had a large
mass over the left pubis / groin area, which was painful to the touch and at rest. (Defendants'
Exhibit C, pp. 55-56, docket #42-4.) On December 1, 2008, Plaintiff was sent to the hospital and
was started on antibiotics and pain medication. On December 10, 2008, Plaintiff was seen by Dr.
Walter F. Finan, M.D., who noted that Plaintiff had an "extremely large hydrocele causing extreme
pain and inability to urinate." (Defendants' Exhibit C, pp. 57-63, docket #42-4.) Plaintiff was
admitted to Marquette General Hospital on December 10, 2008, with a painful, swollen left scrotum.
Plaintiff underwent scrotal exploration with a left orchiectomy. (Defendants' Exhibit C, pp. 65-66,
docket #42-4.) Plaintiff was discharged to the prison on December 13, 2008, and was released with
instructions to push fluids, use a jock strap, and have his dressing changed twice a day. Plaintiff was
also to be given pain medication. (Defendants' Exhibit C, p. 67, docket #42-4.)

On December 14, 2008, Plaintiff was yelling in his cell and shaking the bars,
requesting to see the nurse. Plaintiff was requesting to be moved to a ward room, not ward five,
which is for level five segregation prisoners such as Plaintiff. Plaintiff was also requesting
antibiotics, pain medications, and a dressing change. Plaintiff was yelling most of the time during
his interactions with staff. In the "Plan" section of the note, John H. Geueke, R.N., stated:

> [Plaintiff] advised that he had a surgical incision that required care or
> it might infect. to please keep his hands out of the dressing and allow
> staff to do the dressing change, also to take his vital to better assess
> his condition. [Plaintiff] advisted [sic] to wear his scrotal support to
> aid in healing and to reduce swelling [Plaintiff] advised because of

his security level he was being housed in ward five, His response was "I ain't no nut case this is the ward for psych pt's you put me in another ward" [Plaintiff] advised that when he wished to work with staff he just had to call as the nurses station is just down the hall. That the next time he might have his pain rx would be at 0700 hrs and that staff would be willing to do his dressing when he was willing to work with staff. [Plaintiff] refused dressing again Stating "just get out of here I know people" [Plaintiff] already referred to [medical service provider] foe [sic] follow up.

(Defendants' Exhibit C, pp. 68-69, docket #42-4.)

      On December 15, 2008, Dr. Engelsgjerd noted that Plaintiff was feeling great, doing his own dressing changes and was to be released to "regular prison." (Defendants' Exhibit C, p. 70, docket #42-4.) On December 16, 2008, Nurse Kroupa noted that Plaintiff was afebrile, showed no signs of infection, and had scant drainage on dressing. However, Plaintiff was complaining of pain and asked for pain medication. (Defendants' Exhibit C, p. 73, docket #42-4.) Plaintiff subsequently refused supplies for dressing changes and refused to take his regular medications. (Defendants' Exhibit C, p. 74, docket #42-4.)

      On December 17, 2008, Defendant Galloway noted that Plaintiff was complaining of pain due to recent surgery and was non-compliant with routine medications because he claimed to be nauseated from the pain. Plaintiff was also non-compliant with dressing changes due to a perceived denial of property. Plaintiff was given Vicodin, but continued to refuse his Hytrin, Ecotrin, Zocor, and Procardia. Plaintiff also refused a 4x4 gauze, Bacitracin and 8 oz. of Dial Liquid soap. Plaintiff was instructed regarding the futility of his misdirected anger and the potential for infection if the wound was not cared for. Plaintiff finally accepted the soap, Bacitracin and dressing materials. (Defendants' Exhibit C, p. 73, docket #42-4.)

      On December 30, 2008, Nurse Cordelia D. Miller, R.N., noted that Plaintiff was complaining that certain spots on his incision were slower to heal than others. Plaintiff's incision

was clean, dry and intact, with no sign of infection. (Defendants' Exhibit C, p. 80, docket #42-4.) On January 9, 2009, Dr. Joseph R. Burtch noted that Plaintiff's condition was gradually improving. (Defendants' Exhibit C, p. 81, docket #42-4.) On January 21, 2009, Plaintiff was again seen by Dr. Burtch for a complaint that his incision was not completely closed. Dr. Burtch noted that Plaintiff had what appeared to be subcutaneous tissue coming out of his incision site. However, Plaintiff had no signs of infection or inflammation. (Defendants' Exhibit C, p. 84, docket #42-4.)

On January 26, 2009, Defendant Galloway observed Plaintiff facing his cell door with an erection and masturbating. Defendant Galloway noted that although Plaintiff's behavior was inappropriate during segregation rounds, his ability to achieve an erection was a positive sign. (Defendants' Exhibit C, p. 85, docket #42-4.) Defendant Galloway saw Plaintiff on February 4, 2009, and instructed him that standing up in his cell masturbating was probably not the best activity or position for Plaintiff, as it could put undo strain on incompletely healed tissue. (Defendants' Exhibit C, p. 86, docket #42-4.) On May 1, 2009, Plaintiff refused a nurse appointment, demanding to see the doctor. (Defendants' Exhibit C, p. 87, docket #42-4.) Plaintiff was transferred from LMF to the Baraga Maximum Correctional Facility (AMF) in June of 2009. (Defendants' Exhibit C, p. 89, docket #42-4.)

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007);

*McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). As noted above, Plaintiff has been seen by Defendants and other medical professionals on numerous occasions during the pertinent time period. It is clear that Plaintiff's claim is one of inadequate medical treatment, rather than a complete deprivation of medical care. Therefore, the undersigned concludes that Defendants Cheatham, Galloway, Phillipson, James, Frontera, Crompton, and Tyree are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Plaintiff also claims that Defendant Phillipson denied his request for health care on November 13, 2008, and then drafted a misconduct ticket to cover up her misconduct. Defendant Phillipson attests that on November 13, 2008, she issued Plaintiff a major sexual misconduct for exposure, and that Plaintiff was found guilty of the misconduct by a hearing officer. (Defendants' Exhibit J, ¶ 4.) At the misconduct hearing, Hearing Officer Maki found:

> On 11/13/08 the prisoner exposed his penis to the officer. This exposure was intentional as the prisoner did not cover when ordered to do so. This exposure was not for a legitimate purpose or in a legitimate manner as at the time the prisoner was masturbating. Prisoner claims that the officer's statement on this misconduct report is inconsistent with the Food Loaf Request Form. Since the prisoner did not bother with an investigation, the food loaf request form was not verified by the hearing investigator nor was there any confirmation that the incident mentioned in the request form was the same incident as this misconduct report. It is assumed, however, only for purposes of this decision, that this misconduct report was the subject of the Food Loaf Request Form. Given that, the two documents were not inconsistent. There is no reason that the prisoner could not masturbate himself when he placed his penis on the slot. The request form simply gave more details to the misconduct report and the misconduct report gave more details for the request form. They are not mutually exclusive. Reporting staff member factual and is credible as to what happened.

(Defendants' Exhibit J-1.)   The undersigned concludes that Defendant Phillipson is entitled to summary judgment on this claim.

To the extent that Plaintiff is asserting retaliation claims against Defendants Frontera and Crompton, they assert that they are entitled to summary judgment on those claims.   In his complaint, Plaintiff alleges that at one point, Defendant Crompton sarcastically told Plaintiff that if he wanted an x-ray, he might want to file another grievance because that would make Defendant Crompton order something.   Plaintiff alleges that Defendant Frontera threatened to discontinue any type of treatment or medication when Plaintiff requested such treatment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Thaddeus-X*, 175 F.3d at 394.   Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to assert that he engaged in protected conduct which was the cause of an adverse action.   It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.   *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).   "[A]lleging merely the ultimate fact of retaliation is insufficient."   *Murphy*, 833 F.2d at 108.   "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). There is no indication in this case that Defendants Crompton and Frontera retaliated against him for engaging in protected conduct. Therefore, these claims are properly dismissed.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[5] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803

---

[5]The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.  Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 816.  If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either approach without regard to sequence.  *Id*.  As noted above, Defendants Cheatham, Galloway, Phillipson, and James did not violate Plaintiff's constitutional rights.  Accordingly, they are entitled to qualified immunity.

In conclusion, the undersigned concludes that Defendant Tyree is entitled to summary judgment for failure to exhaust administrative remedies.  The remaining Defendants are entitled to

summary judgment because there is no genuine issue of material fact that they violated Plaintiff's constitutional rights. Therefore, I recommend that Defendants' motions for summary judgment (docket #41 and #90) be granted and this case be dismissed in its entirety.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 24, 2013


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).