UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CALVIN JEROME MOORE,

    Plaintiff,

v.                                    Case No.  2:11-cv-345
                                          HON.  GORDON J. QUIST

E. HITEMAN, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

       Plaintiff Calvin Jerome Moore filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants. Plaintiff alleged that he suffered for a number of years with a hydrocele and was denied medical treatment for the condition. Plaintiff alleges that his testicle began to swell in 2006 and continued to get worse into 2008. The Sixth Circuit explained:

> While Moore's hydrocele was occasionally examined, the primary treatment appears to have been an order for Moore to wear "scrotal support." By late 2008, Moore was suffering from severe pain due to the hydrocele. On December 1, 2008, Moore was transferred to an off-site emergency room and then another hospital, where he was examined by a urologist. The urologist, noting that Moore had "an immense hydrocele," ordered that Moore be given medication to eliminate his fever and pain. The urologist advised the prison that he could perform a hydrocele repair when Moore's fever was gone. Moore was returned to prison the same day.

Order at 1-2, (Docket #127).  After Moore was returned to the prison, a doctor on December 10, 2008, noted that Plaintiff's hydrocele was larger than a grapefruit. Plaintiff's testicle was surgically removed the next day. In reversing the grant of summary judgment, the Sixth Circuit stated:

> Moore produced evidence that he had a serious medical need, given that the urologist diagnosed Moore's condition as mandating treatment and, in any event, a testicle swollen to the size of a volleyball, or even a grapefruit, is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. Moore also provided evidence, in the form of his verified complaint, that jail staff purposely interfered with the prescribed treatment plan from the hospital and that he was deprived of medical care between the time he returned to prison on December 1 until December 10, when he was taken to the hospital in extreme pain. Although the defendants dispute the accuracy of this evidence with medical records and affidavits, we must view the evidence in the light most favorable to Moore at this stage of the proceedings. The defendants do not suggest that they were unaware of the doctor's orders or of Moore's pain and requests for health services. Given the severity of Moore's condition, a refusal to provide medication and timely treatment could lead a reasonable trier of fact to conclude that prison officials exposed Moore to "undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F. 2d 857, 860 (6th Cir. 1976); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009). Summary judgment on Moore's Eighth Amendment claims accruing after September 13, 2008, was not appropriate.

Order at 5, (docket #127).

Defendant Dr. Robert Crompton, M.D., moves for summary judgment arguing that he only examined Plaintiff one time on November 4, 2008, before Plaintiff went to the hospital on December 1, 2008, and before Plaintiff complained of nausea, lower left quadrant pain or made complaints about increased pain caused by his hydrocele. Dr. Crompton asserts that Plaintiff merely complained about numbness in his left leg when he sat on the toilet too long, and numbness in his left arm when he laid on that side. Plaintiff was concerned that his leg would give out and he wanted an MRI. Plaintiff indicated that he did not want surgery. Dr. Crompton felt that Plaintiff had intermittent peripheral nerve compression and advised Plaintiff to avoid positions that caused his symptoms to flare. Dr. Crompton noted that Plaintiff seemed dissatisfied with that advice. Plaintiff claims that he informed Dr. Crompton about the hydrocele and showed him his testicle, but Dr.

Crompton did nothing and refused to examine Plaintiff.  Further, Plaintiff indicates that he actually saw Dr. Crompton on one more occasion, on November 25, 2008, but apparently Dr. Crompton never made a record of that visit.  Dr. Crompton moves for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The issue is not how many times Dr. Crompton examined Plaintiff, but whether Dr. Crompton was deliberately indifferent to Plaintiff's serious medical needs, causing Plaintiff unnecessary pain and a delay in treatment. Dr. Crompton takes a narrow view of the Sixth Circuit decision, and focuses only on the one sentence that indicates that Plaintiff presented evidence that his medical treatment was delayed after he visited the hospital on December 1, 2008, and suffered needlessly until his examination on December 10, 2008 and his surgery on December 11, 2008. The Sixth Circuit clearly stated, however, that summary judgment for Plaintiff's Eighth Amendment claims was not appropriate for claims accruing after September 13, 2008. While that was placed in the opinion to explain the statute of limitations dismissal, that language also makes it clear that the Sixth Circuit was not solely focusing on the events that occurred in December 2008. It is clear that if the facts are in dispute as to whether Dr. Crompton acted with deliberate indifference to Plaintiff's complaints of pain and he knew or should have known about the hydrocele complications, Dr. Crompton is not entitled to summary judgment regardless of the fact that he did not examine Plaintiff in December 2008. Despite Plaintiff's claims that he was examined by Dr. Crompton on November 25, 2008, no record exists to support that claim and Plaintiff has presented absolutely no

evidence other than his assertion that he was examined by Dr. Crompton on that day. Dr. Crompton denies examining Plaintiff on November 25, 2008.[1]

Prior to his examination on November 4, 2008, Plaintiff had presented a number of kites regarding numbness in his leg and back. Plaintiff was seen by various medical providers for these complaints. On November 4, 2008, Dr. Crompton saw Plaintiff for these same complaints.[2] Dr. Crompton reported on November 4, 2008:

> **Subjective**
>
> Pt states he has intermittent numbness to his L side. This is typically positional i.e., he has numbness in his L leg, if he sits on the toilt [sic] too long, numbness to the L arm, if he lays on that side, no weakness assoc. He is concerned that his leg can give out when the numbness is flared. He thinks he needs an MRI. When questioned about the possibility of surgery, he denies wanting to pursue that direction, as the sx are not severe enough.
>
> **Objective**
>
> NAD, Mild decrease external rotation to L hip. Neuro otherwise GI to ext x 4. LE's without atrophy symetric full muscle mass.
>
> **Assessment**
>
> Intermittent peripheral nerve compression.
>
> **Plan**

---

[1] Dr. Crompton primarily worked at the Oaks Facility in Manistee, Michigan. He occasionally filled in at the Alger Correctional Facility in Munising, Michigan, as needed. Plaintiff was confined in the Alger Prison and Dr. Crompton was filling in when he examined Plaintiff on November 4, 2008. Dr. Crompton denies being involved with Plaintiff's care at any other time, including November 25, 2008, but makes no statement as to whether he worked at the Alger Correctional Facility on November 25, 2008.

[2] Plaintiff's medical records go back to 2006, and his hydrocele is documented as early as 2006. Plaintiff submitted a number of kites and made complaints about several different medical concerns, not just about his hydrocele. Plaintiff was seen by medical providers on many occasions for concerns other than his hydrocele.

>Pt advised to avoid positions where his sx may flare.  He seems dissatisfied with this advice, stating that he needs tests to be done.
>Advised to kite if sx progress.

There exists no medical record that shows that Dr. Crompton ever examined Plaintiff again.  Dr. Crompton states that he never saw Plaintiff at any time other than November 4, 2008.  He further states that he was not examining Plaintiff for any issues related to his hydrocele and was not aware of any complaints that Plaintiff had made about his testicles in the past.  Dr. Crompton was a visiting physician on the day he examined Plaintiff, he did not know Plaintiff, and he had no prior history with Plaintiff.  Plaintiff was on the sick call list for that day and Dr. Crompton saw Plaintiff to address concerns about leg and back numbness.

A couple weeks after Dr. Crompton saw Plaintiff, Plaintiff was taken to the hospital for emergency care treatment that was unrelated to his hydrocele issue.  The medical records indicate that Plaintiff was seen for an unscheduled visit on November 23, 2008, for complaints of nausea and abdomen pain and left groin mass.  Plaintiff was taken to the hospital and received an x-ray which revealed right colon constipation, early degenerative disc disease, normal hips, and no evidence of groin hernia.  As of December 1, 2008, Plaintiff's hydrocele clearly turned for the worse.  On that date, Plaintiff was taken to the Munising Memorial Hospital & Health Service and complained of a "painful lump on his left groin."  The record from the hospital states: "He says it has been there about 3 weeks not [sic] and getting to the point where he can not even eat due to the discomfort and pain."  The Outpatient Record indicates that Plaintiff had swollen testicles off and on for over two years, but it had gotten "worse last few days."  Plaintiff was transferred to Marquette General Hospital where he was treated for an infection and released to the prison.  By December 10, 2008, Plaintiff was admitted to Marquette General Hospital and on December 11, 2008, his left testicle was surgically removed.

Further, Dr. Crompton has presented expert medical evidence from Dr. John Bonema, M.D., who states that it is his opinion the complaints presented by Plaintiff to Dr. Crompton on November 4, 2008, were unrelated to Plaintiff's hydrocele. He further states that in reviewing the medical records it was likely that Plaintiff "developed an acute process concerning his hydrocele during late November 2008," and "more likely than not that Plaintiff experienced a hemorrhagic process in which Plaintiff bled into the hydrocele which occurred after Plaintiff's 12/1/08 hospitalization. During the 12/1/08 hospitalization, Plaintiff had an unremarkable testicular ultrasound which showed good flow, no vascular compromise, and only a moderately sized hydrocele." In the opinion of the undersigned, Plaintiff cannot show that Dr. Crompton was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has not rebutted the medical evidence that shows that Dr. Crompton treated him on only one occasion for an issue unrelated to his hydrocele.

Accordingly, it is recommended that Defendant Crompton's Motion for Summary Judgment (Docket #164) be granted.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: April 9, 2015

                                                       /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE